## Cushman Waterman *v.* James W. Stimpson.

### *Book Account. Sale.*

Where the defendant, and one Miles, made an agreement, in which defendant was to let Miles have a hog, provided he would pay him therefor, and for a previous account, in salts; and the defendant also agreed with the plaintiff, in the presence of said Miles, to let him have the same hog, in exchange for salts, if any thing should happen that Miles did not take it; about three weeks after this contract, the plaintiff took two boxes of salts to defendant's store; after they had weighed one box, and were getting in the other, plaintiff inquired of defendant, if he was going to send the hog, and was informed that there was not salts enough to pay Miles' debt and for the hog, and that he should not send it. The plaintiff then, and before the delivery was perfected, claimed the salts as his own; the defendant informed plaintiff, he should hold them on the contract he had made with Miles, and pass them to his credit. The plaintiff refused so to deliver them, and demanded the property or payment for the same. Miles was not present, and nothing appeared to show that he ever spoke to plaintiff to deliver the salts for him. Under this state of facts, *held,* that defendant was bound to restore the salts, or that plaintiff might treat the property as sold, and charge him accordingly, and that plaintiff might recover for the same in this form of action.

Book Account. The action was commenced before a justice of the peace, and came to the county court by appeal. Judgment to account was rendered in the county court, and an auditor appointed, who reported substantially, the following facts :—

The plaintiff claims $20, for a lot of salts, and that some time in the autumn of 1850, the plaintiff, Emery W. Miles, John D. Miles, and Benjamin Sawyer formed a copartnership, for the purpose of making ashes and manufacturing the same into salts ; that after the business had been prosecuted a short time, and before said salts had been made, the plaintiff bought out the said Emery and John, and it did not appear that they, after this sale of their interest, did any thing indicating ownership in the ashes or salts ; that a short time before the delivery of the salts to the defendant, the plaintiff also bought out said Sawyer; that previous to the delivery of said salts, said defendant and said Emery had a conversation, during which defendant agreed to let said Emery have a hog, and receive salts in payment therefor, and for an account that defendant had against said Emery, and that debt was first to be discharged and paid. That some three weeks before the salts were delivered by the plaintiff, the defendant agreed with the

plaintiff to let him have the same hog in exchange for salts, if any thing should happen that said Emery did not have it, the said Emery being present at the time.

That early in the winter of 1850 and 1851, plaintiff employed said Sawyer to draw two boxes of salts to defendant's store, in East Craftsbury, and he accompanied said Sawyer; that said Sawyer's team was stopped near said store, and said Sawyer went in and told defendant that he had brought some salts for said Emery, and that he also told one Smith that the salts belonged to said Emery, the plaintiff being, at the time, within a few feet, but moving from said Sawyer. That one box of said salts were taken in and weighed, and while they were taking the second box through the door, plaintiff inquired of defendant if he was going to send the hog, to which defendant replied that there were not salts enough to pay said Emery's debt and for the hog, and that he should not send it. That the plaintiff then claimed that the salts were his own, and demanded that defendant should pay for same, or let him have them, both of which defendant declined doing, and credited the same to said Emery on book. It did not appear that said Emery ever requested plaintiff to take the salts to defendant for him,— that it did appear that defendant, when he said he should not send the hog, added that if plaintiff would bring an order from said Emery, for the hog, he might have it.

The county court accepted the report, and rendered judgment thereon for plaintiff. Exceptions by defendant.

*T. P. Redfield* and *J. Cooper* for defendant.

1. Can the plaintiff sustain his action of book account against defendant, when there has been no sale of the property to him? *Bundy* v. *Ayer,* 18 Vt. 497. *Hassam* v. *Hassam,* 22 Vt. 516. *Carpenter* v. *Dole,* 13 Vt. 578. *Read* v. *Barlow,* 1 Vt. 97.

2. The report shows that defendant received the salts as Emery W. Miles' property. And when plaintiff demanded them, or pay for them, and defendant refused to do either, it was a tortious act if any thing, and plaintiff cannot maintain book account. *McCrillis* v. *Banks et ux.,* 19 Vt. 442. *Peach* v. *Mills,* 14 Vt. 371. *Albee* v. *Fairbanks,* 10 Vt. 314.

*J. H. Prentiss* for plaintiff.

The fact being found by the auditor, that plaintiff was the owner, this court will not revise the finding on questions of fact. *Edwards* v. *Golding et al.,* 20 Vt. 30.

The only question, then, relates to the sufficiency of this form of action. The defendant did not tortiously acquire possession of the salts, they were delivered to him on terms previously agreed on. On the hearing before auditor, defendant resisted plaintiff's claim, on the ground of purchase from Miles ; this establishes plaintiff's right to recover in this form of action. *Hickock* v. *Stevens et al.,* 18 Vt. 111. *Flower Brook Manufacturing Co.* v. *Buck,* 18 Vt. 238. *Stearns* v. *Dillingham,* 22 Vt. 624.

BY THE COURT. There is no question in this case, but that the article which constitutes the item of charge, for which this action is brought, was really the property of the plaintiff at the time it was taken to defendant's store, and that the defendant not only should, but that he expected to account for the same, to some one. And the question is, whether the plaintiff is the person to whom the payment should be made. It is insisted by the defendant, that the property was received on a contract previously made by him, with one Emery W. Miles, and that he has rightfully passed it to his credit, on his books of account.

The auditor has found, that a few weeks previous to the delivery of this property, the defendant and Miles made an agreement, in which the defendant was to let Miles have a hog, provided he would pay him therefor, and for a previous account he had, in this article. The auditor also finds, that about three weeks before the salts were taken to the defendant's store, the defendant agreed with the plaintiff, in the presence of Miles, to let him have the same hog in exchange for salts, if any thing should happen that Miles should not take it. Thus far in this negotiation, there can be no difficulty in understanding the contract, or doubt as to the intention of the parties. Miles was to have the first privilege in purchasing the hog, by delivering salts enough to pay for it, with his previous account. If he failed to do that, then the plaintiff had the right of being the purchaser, and paying for it in the same way.

After this contract, it appears that the plaintiff procured one Sawyer to take his team, and go with him and take two boxes of

salts to the defendant, amounting to about 631 pounds. The salts were removed into the store, and after one box had been weighed, and they were getting in the other, the plaintiff inquired of the defendant if he was going to send the hog, and was then informed that there was not salts enough to pay Miles debt and for the hog, and that he should not send it. The plaintiff, at that time, claimed the salts as his, and demanded them, or payment for the same, but this the defendant refused to do, and gave credit for the salts to Miles, on his account.

Thus far there can be no doubt about the proper result in the case. The plaintiff had made a contract for the hog, and to pay for it in salts, if Miles did not take it. He took the salts there when Miles was not with them, and there is nothing to show that Miles ever spoke to him to furnish them for him, or that he knew he was going there with them. So far as the plaintiff is concerned, the inference is to be drawn, that he took the salts there on the contract he had previously made, that he might be the purchaser of the hog, if Miles did not take it. The difficulty in the case, arises from the declaration of Sawyer to the defendant, when they first drove up to the store, when Sawyer went in and told the defendant, that he had brought some salts for Miles. The plaintiff was not present when this statement was made, nor does it appear that plaintiff ever knew that such statements, or declarations, had been made to the defendant. And certainly, to make that available in defense, the defendant should have shown that fact, and it should have been found, as a fact in the case, affirmatively by the auditor. That inference this court is not authorised to make, or draw from the evidence, and unless found and stated in the report of the auditor, it must be laid out of the consideration of the case. It also appears, that Sawyer told one Smith that the salts were Miles's. In this instance, the auditor has found that the plaintiff was a few feet from them, but going the other way. If the declaration to Smith could in any event have any effect, it is subject to the same objection as the other. The auditor has not found that these declarations were heard, or came to the knowledge of the plaintiff, and consequently should not enter into an investigation of the case. Removing that consideration from the case, there seems but little ground of dispute. The plaintiff never delivered the salts as the property of Miles, or on his account, but

claimed them as his own, before the delivery was perfected. The defendant informed the plaintiff that he should hold them, on the contract he had made with Miles, and pass them to his credit. This, without the consent of the plaintiff, he had no right to do, and when the plaintiff refused so to deliver them, and demanded the salts, or payment for them, the defendant was bound to return them, or the plaintiff might treat the same as sold, and charge him accordingly. We have no hesitancy in saying, that the plaintiff has done nothing whereby he should lose the salts, or that would justify the defendant in passing them to the credit of Miles, and that the plaintiff has a good claim on the defendant for their value.

The only matter, about which we consider there is any serious question, is, whether this form of action is proper. The salts have been sold by the defendant, for the sum reported by the auditor, and we think the inference proper to be drawn, that the salts were taken by the plaintiff to the defendant, on his previous contract, and the defendant's refusal to pay him, or let him have the hog, gave him a right to charge for the property he had so retained. Certainly he could have sustained general assumpsit for the value of the salts. The law will raise a privity of contract for that purpose, and will equally so, for any action in form *ex contractu*, adapted to the circumstances of the case, and we see no inconvenience in sustaining this action. It is not extending the action any further than the case of *Flower Brook Manufacturing Co.* v. *Buck*, 18 Vt. 238.

The result is, that the judgment of the county court must be affirmed.